Slip Op. 14-15

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **PEER BEARING COMPANY-CHANGSHAN**, <br><br> Plaintiff, <br><br> v. <br><br> **UNITED STATES**, <br><br> Defendant, <br><br> and <br><br> **THE TIMKEN COMPANY**, <br><br> Defendant-intervenor. | Before: Timothy C. Stanceu, Judge <br><br> Consol. Court No. 10-00013 |

### OPINION AND ORDER

[Responding to defendant's motion seeking clarification of court's order of remand and setting new due date for submission of remand redetermination]

Dated: February 13, 2014

*John M. Gurley* and *Diana Dimitriuc Quaia*, Arent Fox LLP, of Washington, DC, argued for plaintiff. With them on the brief was *Matthew L. Kanna*.

*L. Misha Preheim*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for defendant. With him on the brief were *Stuart F. Delery*, Acting Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Claudia Burke*, Assistant Director. Of counsel on the brief was *Joanna V. Theiss*, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, of Washington, DC.

*William A. Fennell* and *Terence P. Stewart*, Stewart and Stewart, of Washington, DC, argued for defendant-intervenor. With them on the brief was *Stephanie R. Manaker*.

Stanceu, Judge: Defendant United States moves for clarification of a portion of a June 6, 2013 order that the court issued in *Peer Bearing Co.-Changshan v. United States*, 37 CIT __, 914 F. Supp. 2d 1343 (2013) ("*Peer Bearing*"). Def.'s Mot. for Clarification 1

(June 13, 2013), ECF No. 131 ("Def.'s Mot.").[1] Additionally, defendant requests an extension of time, until forty-five days from the court's decision on the motion for clarification, for the International Trade Administration, U.S. Department of Commerce ("Commerce" or the "Department") to file the remand redetermination required by *Peer Bearing*. *Id.* at 3.

In this Opinion and Order, the court directs attention to certain aspects of *Peer Bearing* that address the question defendant raises in its motion for clarification. The court declines to modify the substance of its previous ruling and concludes that clarification of *Peer Bearing* beyond what is set forth in this Opinion and Order is unnecessary. As requested by defendant, *id.* at 3, the court extends the period in which Commerce shall submit the required remand redetermination, allowing forty-five days from the date of this Opinion and Order.

## I. DISCUSSION

### A. Defendant's Motion for Clarification

Defendant directs its motion for clarification to the third of six directives in the order set forth in *Peer Bearing*. This directive resulted from plaintiff's contesting the Department's ultimate finding, reached in the first remand redetermination, that certain tapered roller bearings ("TRBs") that had undergone processing in both the People's Republic of China ("China" or the "PRC") and Thailand were of Chinese origin and therefore within the scope of an antidumping duty order on TRBs and parts thereof from China. The court stated this directive as follows:

---

[1] Plaintiff Peer Bearing Company-Changshan and the Timken Company, a plaintiff and defendant-intervenor, did not expressly consent to, but did not oppose, defendant's motion for clarification. Neither party served a response within the fourteen-day deadline imposed by USCIT Rule 7(d).

> Commerce shall submit to the court a second Remand Redetermination in which
> it redetermines, in accordance with the requirements of this Opinion and Order,
> the country of origin of certain tapered roller bearings ("TRBs") that underwent
> further processing in Thailand consisting of grinding and honing (finishing) of
> cups and cones, and assembly; . . . .

*Peer Bearing*, 37 CIT at __, 914 F. Supp. 2d at 1357.

In its motion, defendant requests that the court clarify "whether the Court's Order *requires* Commerce to find that the TRBs were substantially transformed in Thailand and are thus of Thai origin, or whether the order permits Commerce to make new findings under each of the six criteria and make a determination based on these new findings." Def.'s Mot. 2 (emphasis in original). In positing these alternatives, defendant's request for clarification incorrectly interprets the court's Opinion and Order in *Peer Bearing*. With respect to the first alternative, defendant's formulation too broadly describes the court's holding. In stating its second alternative, defendant incorrectly presumes that *Peer Bearing* "permits Commerce to make new findings under each of the six criteria . . . ." *Id.* at 2. The court addresses each of these points below.

1. Defendant Construes Too Broadly the Holding in *Peer Bearing*

Rather than direct Commerce to find that the TRBs were substantially transformed in Thailand, the directive at issue requires Commerce to reconsider the country of origin of those TRBs "in accordance with the requirements of this Opinion and Order." *Peer Bearing*, 37 CIT at __, 914 F. Supp. 2d at 1357. As *Peer Bearing* explained, "the record in this case lacks substantial evidence to support the Department's current determination that the TRBs processed in Thailand were products of China for purposes of the antidumping duty order." *Id.*, 37 CIT at __, 914 F. Supp. 2d at 1356. The court ruled solely on "the Department's current determination," not on any future finding in a second remand redetermination, and grounded its

ruling in the standard of review. *Id.*; *see* 19 U.S.C. § 1516a(b)(1)(B)(i). In doing so, the court held, *inter alia*, that a number of the factual findings upon which Commerce based its ultimate finding that the TRBs processed in Thailand were of Chinese origin were not based on substantial record evidence. *Peer Bearing*, 37 CIT at __, 914 F. Supp. 2d at 1352-56. Defendant's motion recognizes this point. Def.'s Mot. 2 (" . . . the Court ruled that substantial evidence does not support certain findings by Commerce . . . .").

       The court did not reach the question of whether Commerce, in the second remand redetermination, is required to arrive at an ultimate finding that the TRBs in question are of Thai origin. Instead, the court left it to Commerce to decide, in the first instance, whether it is possible to reach an ultimate finding of Chinese origin in the second remand redetermination. The court did not presume or decide that an ultimate finding of Chinese origin in the second remand redetermination could be sustained. Such an ultimate finding may or may not be feasible, for it would have to contend with record evidence to the contrary and recognize the significance of the court's having disallowed a number of findings that were critical to the country of origin determination. Some examples of the findings held in *Peer Bearing* to be unsupported by substantial evidence suffice to clarify this point.

       For instance, the court concluded that the record lacked substantial evidence to support the Department's finding that the processing performed in Thailand on the two major components of the TRBs (cups and cones) imparted no substantial changes to the physical and mechanical properties of the subject merchandise. *Peer Bearing*, 37 CIT at __, 914 F. Supp. 2d at 1352-53. The court also found unsupported by substantial evidence the Department's finding that the processing in Thailand did not impart a substantial change to the essential character of the subject merchandise. *Id.* This finding ignored the evidence demonstrating that no single

component made in China imparted the essential character to the finished TRBs. *Id.* Also lacking was substantial evidence that the nature, extent, and sophistication of the processing performed in Thailand were not significant. *Id.*, 37 CIT at __, 914 F. Supp. 2d at 1353-54. Similarly, the court concluded that the record evidence did not support the finding that investment in the equipment in Thailand was not "significant" in comparison to investment in the equipment in China. *Id.* at 1354.

Because of the various flaws that *Peer Bearing* identified, the court could not sustain the Department's country of origin determination in the first remand redetermination. Any ultimate country of origin finding Commerce reaches in its second remand redetermination must rest on findings of fact that are supported by substantial evidence on the record and also must comply with the other requirements of the court's Opinion and Order in *Peer Bearing*.[2]

2.  The Court Did Not Sustain All of the Department's "Substantial Transformation" Criteria

Defendant's second alternative, Def.'s Mot. 2 ("whether the order permits Commerce to make new findings under each of the six criteria and make a determination based on these new findings"), rests on an assumption that the court affirmed the criteria Commerce used to determine the country of origin for the subject merchandise in the first remand redetermination. In fact, the court did not do so.

The court found fault with the first and fifth criteria that Commerce applied to conclude that no substantial transformation occurred. The first criterion considers whether both the finished good and the finished and unfinished parts within the class or kind of merchandise are

---

[2] In its Opinion and Order, the court did not preclude Commerce from reopening the record to obtain and admit additional record evidence to support new findings of fact, instead deferring to the general principle that the decision of whether or not to reopen the record upon remand is a matter for an agency to decide. *Peer Bearing Co.-Changshan v. United States*, 37 CIT __, 914 F. Supp. 2d 1343 (2013).

subject to the order.  The court questioned the Department's conclusion as to the first criterion that "'[t]he fact that both the finished and unfinished products are within the scope of the order suggests that the TRBs are not substantially transformed in Thailand'" and noted that "the Remand Redetermination offers no reasoning in support of this conclusion."  *Peer Bearing*, 37 CIT at __, 914 F. Supp. 2d at 1352 (quoting *Final Results of Redetermination Pursuant to Court Remand 8* (Apr. 11, 2012), ECF No. 107).  The court explained that Commerce, in reaching the unsupported conclusion, had misstated the question presented, which was whether the finished and unfinished parts sent from China to Thailand were substantially transformed when undergoing processing in Thailand resulting in finished TRBs.  *Id.*  As the court reasoned, the hypothetical issue of whether "the Chinese-origin parts would have been considered subject merchandise had they been exported to the United States" has no apparent relevance to that question.  *Id.*

   As to the fifth criterion (ultimate use), the court found multiple flaws in the Department's analysis.  Among those flaws was the erroneous finding that the inclusion of finished and unfinished parts within the scope of the Order "indicates that both finished and unfinished TRBs are intended for the same ultimate end-use, that is, a finished TRB that can ultimately be used in a downstream product."  *Id.*, 37 CIT at __, 914 F. Supp. 2d at 1355.  This finding erred in presuming that unfinished TRBs are at issue in this case and that the scope of the Order is relevant to the question of ultimate end use, which is an issue of fact.  *Id.*  The court also found flawed the Department's finding that the expected use of the unfinished TRB components is the same use as that of finished TRBs.  *Id.*

B.  The Court Grants Additional Time for Submission of the Second Remand Redetermination

In light of the above discussion, the court grants defendant's request that Commerce be allowed forty-five days from the date of this Opinion and Order to file the second remand redetermination.

## II.  CONCLUSION AND ORDER

Upon consideration of the court's Opinion and Order dated June 6, 2013, defendant's Motion for Clarification, and all other papers and proceedings had herein, it is hereby

**ORDERED** that the International Trade Administration, U.S. Department of Commerce shall submit its second remand redetermination within forty-five (45) days from the date of this Opinion and Order; it is further

**ORDERED** that Peer Bearing Company-Changshan ("CPZ") and The Timken Company ("Timken") shall have thirty (30) days from defendant's filing of the second remand redetermination to file any comments thereon; and it is further

**ORDERED** that defendant shall have fifteen (15) days from the filing of CPZ's or Timken's comments, whichever is later, in which to file any response to such comments.

/s/ Timothy C. Stanceu
Timothy C. Stanceu
Judge

Dated:  February 13, 2014
        New York, New York